UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | 1:04-CR-140 |
| v. | ) | |
| | ) | COLLIER/CARTER |
| | ) | |
| SHAMEL ANTONE LODGE | ) | |

REPORT AND RECOMMENDATION

I. Introduction

Defendant Shamel Antone Lodge's Motion to Suppress (Doc. No. 51) is before the undersigned Magistrate Judge having been referred for a Report and Recommendation by the District Court pursuant to 28 U.S.C. § 636(b)(1)(B). Mr. Lodge asserts that police illegally stopped his vehicle traveling northbound on I-75 on August 19, 2004, and consequently, the subsequent search of his car violated the Fourth Amendment. For the reasons stated herein, it is RECOMMENDED that defendant's motion to suppress be DENIED.

II. Relevant Facts

A hearing was held before the undersigned Magistrate Judge on the defendant's motion to suppress on Wednesday, December 21, 2005. Tennessee State Trooper Kevin Hoppe was the only witness to testify. Hoppe is a K-9 officer employed by the Tennessee Highway Patrol and stationed primarily in McMinn, Polk, and Bradley counties. His job duties entail working crashes, traffic and enforcement, and utilizing the K-9 drug dog, Katie, when necessary. In the early morning hours of August 19, 2004, Trooper Hoppe was stationed on the side of I-75 at the 44-mile marker using his radar and watching northbound traffic. State Trooper Chuck

1

Melbourne was stationed on the same side of the road with his radar facing the opposite direction to Trooper Hoppe. Their respective vehicles were situated so that the drivers' side windows were facing each other, and Hoppe and Melbourne were able to converse.

At approximately 1:00 a.m., Hoppe observed a tractor trailer proceeding north in the fast lane. Directly behind this vehicle, less than a vehicle length, was a car flashing its lights on and off. The driver would flash on the brights, hold it for a second or two, and then flash it off. He did this numerous times. Hoppe told Melbourne he was going to stop the driver with the flashing lights.

Hoppe proceeded out into traffic and activated his emergency lights. The driver was slow to stop. He continued looking at Hoppe in the mirror and leaning over to the passenger floorboard as if he was trying to hide something. Hoppe testified he pulled the defendant over because he was "bright lighting" other drivers which was illegal and created a dangerous situation for the truck driver and oncoming traffic in the southbound lanes of I-75.

After stopping the defendant, Hoppe was concerned that the defendant appeared to be looking for something or hiding something under the front passenger seat. Hoppe approached the front passenger's side window and asked the defendant why he was bright-lighting people. The defendant replied that the truck had cut him off. The defendant could produce no driver's license and was acting extremely nervous, far more nervous than a driver in a typical traffic stop. Defendant retrieved from the glove box a paper which defendant said bore his name and social security number. Later during the traffic stop, Hoppe learned the name and social security number belonged to the defendant's brother. While the defendant had been looking in the glove box for ID, he had continued to look down at the floor of the passenger seat.

Hoppe radioed Melbourne to join him at the scene because he felt that the defendant was acting very strange, and Hoppe was concerned for his safety as well as suspicious that other criminal activity might be occurring. Hoppe asked the defendant to exit the vehicle. The defendant continued to express a desire to look under the passenger seat. Hoppe asked him for consent to search for ID, drugs, and firearms. The defendant refused consent. Hoppe then told the defendant that he had a drug dog and he was going to run the drug dog around the car. At this point, the defendant became "distraught" and appeared to be looking around. Hoppe thought the defendant was getting ready to run, so he told Melbourne, who had arrived on the scene by that time, to place the defendant in the back of Melbourne's patrol car.

After the defendant was secured in the patrol car, Hoppe presented defendant's vehicle to K-9 Katie who alerted on the front passenger side door seam. Hoppe then searched the vehicle and found a loaded .380 pistol under the mat of the front passenger seat. Also under the front passenger seat, he found two Georgia ID only documents. Hoppe then searched the trunk and found a vacuum sealer, a device which Hoppe in his experience had often seen used to package narcotics. A search of a bag in the trunk revealed a vacuum sealed block of cocaine in excess of 100 grams. Defendant was placed under arrest and taken to the McMinn County Justice Center. His car was impounded and towed to the McMinn County Justice Center where its contents were inventoried.

Hoppe testified that even if he had not found contraband inside the vehicle, he would not have allowed the defendant to drive away. He would have arrested the defendant for driving without a valid license and for criminal impersonation of another individual. Then, the vehicle would have been impounded and taken to the McMinn County Justice Center where the contents

of the vehicle would have been inventoried pursuant to the policies and practices of the Tennessee Highway Patrol.

Trooper Hoppe issued five citations to the defendant charging the defendant with possession of Schedule II narcotics, criminal impersonation, possession of a weapon with the intent to go armed, driving with a suspended license, and possession of drug paraphernalia, all in violation of Tennessee law. The defendant was not charged with any type of light law violation or speeding or other traffic related violation. However, in the narrative section of the arrest/criminal interdiction report filed by Hoppe, Hoppe wrote "observed a vehicle bright-lighting another vehicle and tailgating it." Hoppe listed the reason for the stop as "Light Law."

### III. Analysis

*1. Probable Cause Existed to Effect the Stop*

It is well settled that when police have conducted a warrantless search, the government bears the burden of proof to show the search was justified under the Fourth Amendment. *United States v. Haynes*, 301 F.3d 669, 676 (6th Cir. 2002). Defendant asserts that Trooper Hoppe had no valid basis under the Fourth Amendment to stop his vehicle and, therefore, all evidence seized as a result of the vehicle search following the traffic stop must be suppressed as fruit of the poisonous tree. A vehicle stop is reasonable under the Fourth Amendment when a law enforcement officer has probable cause to believe he has witnessed a traffic violation, even if the traffic offense is minor and the officer has additional subjective reasons for making the stop. *Whren v. United States*, 517 U.S. 806, 810, 812-13 (1996); *United States v. Herbin*, 343 F.3d 807, 809 (6th Cir. 2003); *United States v. Harvey*, 16 F.3d 109, 112 (6th Cir.), *cert. denied*, 513 U.S. 900 (1994); *United States v. Ferguson*, 8 F.3d 385, 391 (6th Cir. 1993), *cert. denied*, 513 U.S. 828 (1994).

4

Trooper Hoppe testified he stopped the defendant traveling north on I-75 because he saw the defendant repeatedly blink his bright lights, holding them for a second or two, into oncoming traffic– conduct which Hoppe said was a violation of Tennessee's "light law." Tenn. Code Ann. § 55-9-407 provides in relevant part:

> Whenever the road lighting equipment on a motor vehicle is so arranged that the driver may select at will between two (2) or more distributions of light from headlights or lamps or auxiliary road lighting lamps or lights, or combinations thereof, directed to different elevations, the following requirements shall apply while driving during the times when lights are required:
>
> *       *       *
>
> (2) When within five hundred feet (500') of an oncoming vehicle, a driver shall use a distribution of light so aimed that the glaring rays therefrom are not directed into the eyes of the oncoming driver.

At the suppression hearing, defendant intimated that because Hoppe did not charge the defendant with a violation of the "light law," he did not believe Hoppe was being truthful about the reason why he stopped defendant. On the contrary, I found Hoppe to be a very credible witness. I also note that Hoppe indicated on one of the arrest reports that the reason he stopped the defendant was a violation of the "light law." I conclude Hoppe had probable cause to stop defendant for a violation of Tenn. Code Ann. § 55-9-407, and thus Hoppe's initial detention of the defendant did not violate the Fourth Amendment.

*2. Probable Cause Existed to Search the Vehicle*

Once a vehicle is lawfully stopped, the officer may request a driver's license and vehicle registration from the driver. *See Berkemer v. McCarty*, 468 U.S. 420, 439 (1984); *United States v. Hill,* 195 F.3d 258, 269 (6th Cir. 1999), *cert. denied*, 528 U.S. 1176 (2000). Defendant was required by Tennessee law to have on his person or in his vehicle a valid driver's license and a

5

valid registration or facsimile thereof. Tenn. Code Ann. §§ 55-4-108, 55-50-351. The driver of a vehicle may be detained until after the officer has finished verifying the driver's license, checking other records, and issuing a citation, as these acts are within the purposes of the initial stop. *See United States v. Wellman*, 185 F.3d 651, 656 (6th Cir.1999) (involving the issuance of a courtesy citation); *United States v. Bradshaw*, 102 F.3d 204, 212 & n. 19 (6th Cir.1996) (involving the issuance of a regular citation). Once the original purpose of the stop has been satisfied, however, continued detention is not lawful unless police have obtained additional information to justify further detention under the Fourth Amendment. *United States v. Davis,* 430 F.3d 345, 354-55(6th Cir. 2005); *Weaver v. Shadoan,* 340 F.3d 398, 408 (6th Cir. 2003); *Hill,* 195 F.3d at 264; *Wellman*, 185 F.3d at 656-57; *Bradshaw*, 102 F.3d at 212. If a detention exceeds its proper scope, then any evidence seized during the illegal detention is subject to suppression as fruit of the poisonous tree. *Davis,* 430 F.3d at 356; *Hill*, 195 F.3d at 264.

While an alert by a reliable, trained drug dog provides probable cause to search a vehicle, a dog sniff is not, by itself, a seizure under the Fourth Amendment.[1] *Illinois v. Caballes*, 125 S.Ct. 834, 838 (2005); *Davis,* 430 F.3d at 355-56; *Hill*, 195 F.3d at 272; *United States v. Buchanon*, 72 F.3d 1217, 1226 (6th Cir. 1995). Nevertheless, consistent with the principles previously discussed, if a dog sniff is conducted on a person's vehicle while that person is illegally detained, then the search made pursuant to a positive alert violates the Fourth Amendment and the fruits of the search must be suppressed. *Id.*

---

[1] At the suppression hearing, the defendant specifically stated he does not contest the reliability of Katie, the K-9 drug dog in this case.

Trooper Hoppe testified that once the defendant was unable to produce a valid driver's license, the defendant was not free to leave as he intended to arrest the defendant for driving without a valid license. It is a violation of Tennessee law to drive without a valid license, Tenn. Code Ann. § 55-50-351, and Hoppe had probable cause to arrest defendant for this violation when he was unable to produce a valid license. Consequently, when Hoppe conducted the dog sniff, the defendant was legally detained and the dog sniff, which did not extend the detention beyond its proper scope, did not violate the Fourth Amendment.

K-9 Katie's alert on the vehicle gave Hoppe probable cause to search the car for contraband. Warrantless searches of vehicles are permitted where officers have probable cause to believe the vehicle contains evidence of a crime. *Maryland v. Dyson*, 527 U.S. 465, 466-67 (1999); *Chambers v. Maroney*, 399 U.S. 42, 52 (1970); *Carroll v. United States*, 267 U.S. 132 (1925); *United States v. Cope*, 312 F.3d 757, 775 (6th Cir. 2002). Police may search the entire vehicle and any contents or containers therein. *California v. Acevedo*, 500 U.S. 565 (1991); *United States v. Mans*, 999 F.2d 966, 969 (6th Cir.), *cert. denied*, 510 U.S. 999 (1993).

*3. The Vehicle Could be Searched Incident to Arrest*

Another independent and valid basis for searching defendant's vehicle is a search incident to arrest. When the driver of a vehicle is lawfully arrested, the passenger compartment of the vehicle may be searched without a warrant or additional demonstration of probable cause. *New York v. Belton,* 453 U.S. 454 (1981); *United States v. White*, 871 F.2d 41, 42-44 (6th Cir. 1989).

In this case, the defendant was arrested and cited for driving on a suspended license (in addition to criminal impersonation for giving a false name). Thus, the search of the passenger

7

compartment of the car was valid, and the discovery of the loaded weapon provided probable cause to search the trunk of the car as well.[2]

The undersigned notes the government argues several other bases to permit the search of defendant's vehicle pursuant to the Fourth Amendment. However, the two bases discussed herein are certainly adequate to justify the search of defendant's vehicle, thus there is no need to discuss all of the government's arguments.

### IV. Conclusion

For the reasons stated herein, it is RECOMMENDED defendant Shamel Antone Lodge's motion to suppress (Doc. No. 51) be DENIED.[3]

ENTER:

s/William B. Mitchell Carter
UNITED STATES MAGISTRATE JUDGE

---

[2] Tenn. Code Ann. § 39-17-1307 and Tenn. Code Ann. § 30-17-1308 prohibit carrying a loaded, concealed firearm.

[3] Any objections to this Report and Recommendation must be served and filed within ten (10) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140, 88 L.Ed.2d 435, 106 S. Ct. 466 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive or general. *Mira v. Marshall*, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370 (6th Cir. 1987).